IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MELISSA LANE | : | |
| | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 18-537 |
| USAA GENERAL INDEMNITY COMPANY | : | |

**MEMORANDUM**

**SURRICK, J.**                                                                                            **OCTOBER   18  , 2019**

      Presently before the Court are Defendant USAA General Indemnity Company's Motion for Leave to Supplement Affirmative Defenses in response to Plaintiff's claims for underinsured motorist ("UIM") benefits and bad faith (Def.'s Mot. to Supplement, ECF No. 18) and Defendant's Motion for Summary Judgment as to all claims (ECF No. 22). For the following reasons, the Motion for Leave to Supplement Affirmative Defenses and the Motion for Summary Judgment will be denied.

**I.     BACKGROUND**

    **A.     Factual Background**

      On October 10, 2015, Plaintiff was a passenger in a 2010 Mitsubishi, insured by Defendant. (Compl. ¶¶ 2, 7, Notice of Removal Ex. A, ECF No. 1.) Defendant's insurance policy on the 2010 Mitsubishi included UIM protection in the sum of $100,000 per person, $300,000 per accident. (*Id*. ¶ 8.) While Plaintiff was a passenger, the 2010 Mitsubishi was struck from behind by a 2006 Mercury, owned and operated by Julie Macenka and insured by Omni Insurance Company ("Omni"). (*Id*. ¶¶ 4, 5, 18.) Macenka's Omni insurance policy on

the 2006 Mercury provided for bodily injury liability in the sum of $15,000.  (*Id*. ¶ 18.)  Plaintiff alleges that she suffered serious injuries in the collision.  (*Id*. ¶ 5.)

When negotiating settlement with Macenka and Omni, Plaintiff's Counsel provided a copy of Omni's proposed general release to Defendant, seeking Defendant's consent to the third-party settlement in order to preserve Plaintiff's UIM claim with Defendant.  (Plf.'s Resp. 2-3, ECF No. 19; Def.'s Reply 2, ECF No. 20.)  Defendant consented to the third-party settlement. (Plf.'s Resp. 3.)  In reliance on Defendant's consent, Plaintiff executed Omni's proposed general release and received $15,000 under Macenka's Omni policy.  (Compl. ¶ 18; Plf.'s Resp. 3-4.) Plaintiff alleges that the $15,000 is insufficient to fully compensate her for her damages caused by the collision.  (Compl. ¶ 19.)  Plaintiff asserts a claim for UIM benefits and a claim for bad faith pursuant to 42 Pa. C.S.A. § 8371 against Defendant.  (*Id*. ¶¶ 20, 24.)[1]

### B. Procedural History

On January 2, 2018, Plaintiff filed a Complaint against Defendant in the Philadelphia Court of Common Pleas.  (Notice of Removal, Ex. A.)  On February 7, 2018, Defendant removed the action to this Court under 28 U.S.C. §§ 1332(a), 1441, and 1446.  (Notice of Removal.)  On February 14, 2018, Defendant filed its Answer.  (ECF No. 4.)  On June 13, 2019, the current Amended Scheduling Order was entered.  (ECF No. 17.)

On August 28, 2019, one year, six months, and fourteen days after filing its Answer, Defendant filed the instant Motion for Leave to Supplement Affirmative Defenses.  On September 6, 2019, Plaintiff filed a Response.  On September 16, 2019, Defendant filed a Reply, and Plaintiff filed a Sur-Reply.

---

[1] On October 11, 2019, a Joint Stipulation of the Parties to Dismiss Count II – Bad Faith, with Prejudice was approved by the Court.

On September 17, 2019, Defendant filed the instant Motion for Summary Judgment. On October 7, 2019, Plaintiff filed a Response.

## II. DISCUSSION

### A. Motion for Leave to Supplement Affirmative Defenses

Defendant seeks leave to amend its Answer to Plaintiff's Complaint to assert the additional affirmative defense that "Plaintiff's claims are barred by the doctrine of release and by the terms and effect of the RELEASE of ALL CLAIMS executed by Melissa Lane on September 7, 2017" with Macenka and Omni. (Def.'s Mot. to Supplement, Ex 1.) Specifically, Defendant contends that the general release executed by Plaintiff releasing the third-party tortfeasor, Macenka, and her insurer, Omni, precludes Plaintiff's action against Defendant.

Leave to amend shall be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). However, leave to amend need not be given when amendment would be futile. *Garvin v. City of Phila.*, 354 F.3d 215, 222 (3d Cir. 2003); *see also Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) ("Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility." (citation and internal quotation marks omitted)). A proposed amendment is futile if the pleading, as amended, "would fail to state a claim upon which relief could be granted" under Federal Rule of Civil Procedure 12(b)(6). *Shane*, 213 F.3d at 115 (citation omitted). To satisfy the Rule 12(b)(6) standard, the amended pleading must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When a federal court exercises diversity jurisdiction, the legal sufficiency of an affirmative defense is analyzed under state law. *See Charpentier v.*

*Godsil*, 937 F.2d 859, 867 (3d Cir. 1991); *see also Beloff v. Seaside Palm Beach*, No. 13-100, 2014 U.S. Dist. LEXIS 137950, at *8 (E.D. Pa. Sep. 29, 2014).

Even if all facts asserted by Defendant in its proposed amendment are taken as true, Defendant's proposed supplemental affirmative defense is futile under Pennsylvania UIM insurance law. In the context of UIM claims, the Pennsylvania Superior Court has held that "in the absence of unequivocal language to the contrary, a general release of a third party tortfeasor will not be held to discharge the separate contractual obligation of an insurance carrier to provide underinsurance benefits." *Sparler v. Fireman's Ins. Co. of Newark, N.J.*, 521 A.2d 433, 437 (Pa. Super. 1987), *allocatur denied,* 540 A.2d 535 (Pa. 1988).

In *Sparler*, the injured party sustained personal injuries due to a motor vehicle accident. The injured party signed a general release and settled his claims against the third-party tortfeasor for the liability limit of the tortfeasor's insurance policy. The general release provided as follows:

> That [injured party], . . . for the sole consideration of Twenty-Five Thousand dollars ($25,000.00), to us in hand paid, receipt whereof is hereby jointly and severally acknowledged, have remised, released, and forever discharged and . . . do hereby remise, release and forever discharge [tortfeasor] and his . . . successors and assigns . . . and all other persons, firms, and corporations, of and from any and all claims, demands, rights, and causes of action, of whatsoever kind or nature, arising from or by reason of any and all known and unknown, foreseen and unforeseen bodily and personal injuries, loss and damage to property, and the consequences thereof, resulting, and to result, from an accident which happened on or about the 30th day of April 1983 . . . .

*Id.* at 435. The settlement with the tortfeasor did not fully compensate the injured party. *Id.* at 434. As a result, the injured party asserted a claim against his insurer for UIM benefits. *Id.* However, the insurer argued that the injured party's executed general release with the tortfeasor barred the injured party's UIM claim against his insurer. *Id.* After analyzing the language of the release within the context of UIM coverage, the Superior Court found that:

4

> [a]lthough the phrase 'and all other persons, firms and corporations' appeared in boilerplate print following [tortfeasor's] name, the release did not otherwise suggest or identify [insurer] as a party being released or discharged. The only reasonable interpretation of the release, when it is considered in light of the circumstances surrounding its execution, is that [injured party] did not intend to release [insurer] from its contractual obligation. [Insurer] was not a party to the release, did not negotiate to reduce any obligations which it might have had under the policy, and paid no consideration to be released from any such contractual obligations.

*Id.* at 435. In support of its holding, the Superior Court noted the distinction between the tortious liability of the released tortfeasor and the contractual liability of the insurer. *Id.* at 435-36.

The language of the general release in *Sparler* mirrors the language of the general release executed by Plaintiff. Plaintiff's executed general release provides as follows:

> For the sole consideration of fifteen thousand dollars and zero cents . . . the receipt and sufficiency whereof is hereby acknowledged, the undersigned hereby releases and forever discharges Julie Macenka their heirs, executors, administrators, agents and assigns, and any other person, firms or corporations liable or who might be claimed to liable, none of whom admit any liability to the undersigned but all expressly deny any liability, from any and all claims, demands, damages, actions, causes of action or suits of any kind or nature whatsoever and particularly on account of all injuries, known and unknown, and medical treatment thereof, both to person and property, which have resulted or may in the future develop from an accident which occurred on or about 10th day of Oct, 2015 at or near Bensalem PA 19020.

(Def.'s Mot. to Supplement, Ex.1.) Like the *Sparler* release, Plaintiff's executed release includes the language "and any other person, firms or corporations liable or who might be claimed to liable," but does not identify Defendant as a party being released or indicate any intent to discharge Defendant's contractual obligation to provide Plaintiff UIM benefits. Also like the insurer in *Sparler*, Defendant was not a party to the general release, did not negotiate to reduce any contractual obligations, and did not pay any consideration for the release. In fact, when negotiating settlement with Macenka and Omni, Plaintiff's Counsel provided a copy of Omni's

proposed general release to Defendant, seeking Defendant's consent to the third-party settlement in order to preserve Plaintiff's UIM claim with Defendant. After reviewing Omni's proposed general release, Defendant consented to the third-party settlement. In reliance on Defendant's prior consent, Plaintiff executed Omni's general release and received $15,000 under Macenka's Omni policy. Under *Sparler*, Plaintiff's general release of Macenka and Omni will not preclude Plaintiff from pursuing the present action against Defendant for UIM benefits because the executed general release did not contain language unequivocally discharging Defendant from its contractual obligation to provide UIM benefits to Plaintiff.

Defendant argues that *Sparler* was overruled by *Buttermore v. Aliquippa Hosp.*, 561 A.2d 733, 735 (Pa. 1989), and a subsequent line of Pennsylvania cases holding that, absent fraud, accident, or mutual mistake, a plaintiff who executed a general release with a third party discharging all claims and parties effectively discharged defendant as well, even though defendant was not explicitly named in the release. *Buttermore*, 561 A.2d at 735; *see also Ford v. Buseman*, 954 A.2d 580 (Pa. Super. 2008), *app. denied*, 970 A.2d 431 (Pa. 2009); *Taylor v. Solberg*, 778 A.2d 664 (Pa. 2001); and *Republic Ins. v. The Paul Davis Sys. of Pittsburgh South, Inc.*, 670 A.2d 614, 615 (Pa. 1995). However, Plaintiff correctly points out that *Sparler* is distinguishable from this line of cases, none of which addressed UIM claims.

Defendant references a single decision by the Philadelphia County Court of Common Pleas in which plaintiff's general release with a third-party tortfeasor barred plaintiff's UIM claim even though the UIM claim was not explicitly mentioned in the release. *See Crisp v. ACE Am. Ins. Co.*, 2017 Phila. Ct. Com. Pl. LEXIS 125 (Phila. Cnty. C.C.P. 2017). However, absent decisions by the Pennsylvania Supreme Court overruling *Sparler* or extending *Buttermore* to the

context of UIM claims, *Sparler* is the authoritative Pennsylvania law addressing the impact of an injured party's general release with a third-party tortfeasor on the injured party's UIM claims.

Interestingly, seventeen years after the Pennsylvania Supreme Court's decision in *Buttermore*, the Pennsylvania Superior Court addressed whether an injured party's general release with a primary UIM insurer barred the injured party's UIM claims with the secondary UIM insurer. *See Nationwide Ins. Co. v. Schneider*, 906 A.2d 586, 596 (Pa. Super. 2006), *aff'd on other grounds*, 960 A.2d 442 (Pa. 2008). The general release in *Schneider* provided as follows:

> [Injured party] hereby acknowledges and agrees that the Release set forth in paragraph 1 hereof is a general release and he further expressly waives and assumes the risk of any and all claims for damages which exist as of this date but of which the Claimant does not know or suspect to exist, whether through ignorance, oversight, error, negligence, or otherwise, and which, if known, would materially affect the Claimant's decision to enter into this Settlement Agreement.

*Id*. Relying on *Sparler*, the court in *Schneider* held that, absent explicit language to the contrary, the injured party's executed general release with the primary UIM insurer did not discharge the secondary UIM insurer from its contractual obligation to the injured party. *Id*.

Considering the holdings in *Schneider* and *Sparler*, our finding that Plaintiff's general release with Macenka and Omni does not bar Plaintiff's UIM claim against Defendant is consistent with current Pennsylvania UIM law. Moreover, our holding is also consistent with the remedial purpose of Pennsylvania's Motor Vehicle Financial Responsibility Law ("MVFRL") which requires insurers to offer UIM coverage. 75 Pa. C.S.A. § 1731(a). Although the MVFRL contains no explicit statement of purpose, the Pennsylvania Supreme Court held that a public policy underlying the MVFRL is to protect "innocent victims from underinsured motorists who cannot adequately compensate the victims for their injuries." *AAA Mid-Atlantic Ins. Co. v. Ryan*,

7

84 A.3d 626, 633 (Pa. 2014) (quoting *Eichelman v. Nationwide Ins. Co.*, 711 A.2d 1006, 1010 (Pa. 1998)).

Because Defendant's proposed supplemental affirmative defense would be futile, as it fails to satisfy the Rule 12(b)(6) standard and is insufficient under Pennsylvania UIM law, Defendant's Motion for Leave to Supplement Affirmative Defenses will be denied.[2]

### B. Motion for Summary Judgment

Defendant also moves for Summary Judgment as to all Counts of Plaintiff's Amended Complaint. Because the Court approved the Joint Stipulation dismissing the bad faith claim with prejudice, only the UIM benefits claim remains. Defendant's sole argument in support of its Motion for Summary Judgment as to the UIM benefits claim is that the general release encompassed Plaintiff's UIM claim. For the reasons set forth in the discussion of Defendant's Motion for Leave to Supplement Affirmative Defenses, Defendant's Motion for Summary Judgment will be denied.[3]

---

[2] Defendant has also argued that it should be granted leave to supplement its affirmative defenses because: (1) Defendant did not receive a copy of the executed general release until July 16, 2019; (2) Plaintiff will not be prejudiced because adding this affirmative defense will not require additional discovery or delay trial or surprise Plaintiff; (3) the current Amended Scheduling Order did not provide a deadline for amended pleadings; and (4) Defendant attached the proposed supplemental affirmative defense to its motion. (Def.'s Mot. to Supplement.) Because this proposed supplemental affirmative defense is futile, we need not address these procedural arguments.

[3] In its Motion for Summary Judgment, Defendant refers to several additional cases to support this argument. Again, none address the impact of an injured party's general release with a third-party tortfeasor on an injured party's UIM claim when the general release does not contain a provision explicitly preserving the UIM claim. *See Erie Ins. Exchange v. Celina Mutual Ins. Co.*, 1991 U.S. Dist. LEXIS 10438 at *13-14 (E.D. Pa. 1991) (holding that a general release with a third-party tortfeasor barred the UIM insurer's subrogation rights: "An insurer's subrogation right to collect from a tortfeasor is not, therefore, coextensive with an insured's right to collect underinsured motorist benefits from that insurer"); *Erie Telecomms., Inc. v. City of Erie*, 853 F.2d 1084, 1100 (3d Cir. 1988) (holding that cable operator, by signing release voluntarily and intelligently, relinquished its constitutional claims against city); *Three Rivers Motors Co. v. Ford Motor Co.*, 522 F.2d 885, 895-96 (3d Cir. 1975) (holding that former

### III. CONCLUSION

For the foregoing reasons, Defendant USAA General Indemnity Company's Motion for Leave to Supplement Affirmative Defenses and Defendant's Motion for Summary Judgment will be denied.

An appropriate Order follows.

**BY THE COURT:**

_____
**R. BARCLAY SURRICK, J.**

---

franchisee's executed general release at the time it sold its franchise interests barred former franchisee's antitrust action against franchiser); *Grafton v. Nationwide Ins. Co.*, 1998 U.S. Dist. LEXIS 11283 at *2-3 (M.D. Pa. 1998) (holding that insured's executed general release with UIM insurer releasing the UIM claim also barred insured's bad faith claim against UIM insurer); *Applebaum v. State Farm Mut. Auto. Ins. Co.*, 626 F. Supp. 1299, 1306 (M.D. Pa. 1986) (holding that decedent's mother's executed general release with insurer releasing uninsured motorist claim and survivor loss benefit claim also barred estate's work loss benefits claim); *Wolbach v. Fay*, 412 A.2d 487, 488 (Pa. 1980) (holding that injured party's executed general release with one named tortfeasor effectively released all other tortfeasors); *Estate of Bodnar*, 372 A.2d 746, 748 (Pa. 1977) (holding that savings and loan association's executed general release with contractor barred savings and loan association's claim against decedent's estate for payment of a construction loan between contractor and decedent); *Thomas v. Sandstrom*, 2010 U.S. Dist. LEXIS 73307 at *16 (M.D. Pa. 2010) (holding that dog's owner's executed release of ownership effectively released all the owner's claims arising from the seizure of his dog); *Brown v. Cooke*, 707 A.2d 231, 232 (Pa. Super. 1998) (holding that injured party's release of claims against business owner, driver, and driver's primary insurer did not bar claim against driver's secondary insurer for excess coverage where release specifically reserved injured party's excess coverage claim); *Ingraham v. GEICO*, 2009 U.S. Dist. LEXIS 24467 at *41-42 (W.D. Pa. 2009) (holding that insured's general release of wage loss claims with insurer effectively released insured's bad faith claim against insurer); *Armstrong v. Antique Auto. Club of Am.*, 2009 U.S. Dist. LEXIS 86610 at *12-14 (M.D. Pa. 2009) (holding that injured party's release with tortfeasor did not bar injured party's claims against other tortfeasors because it did not contain any general language releasing any other persons, associations and/or corporations).